**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALICE POSEY**, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**NJR CLEAN ENERGY VENTURES CORPORATION**,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Civ. Action No.: 14-6833 (FLW)(TJB)

**OPINION**

**WOLFSON, United States District Judge**

Plaintiff Alice Posey ("Plaintiff") brings this case on behalf of herself and all other similarly situated individuals (the "Class"), alleging that the solar panel lease (the "Lease") she executed with Defendant NJR Clean Energy Ventures Corporation ("Defendant") is not compliant with the Consumer Leasing Act subchapter of the Truth-in-Lending Act (the "CLA"), 15 U.S.C. § 1667a, and the Consumer Financial Protection Bureau's regulations implementing the CLA ("Regulation M"), 12 C.F.R. § 1013 et seq. Plaintiff also asserts that the Lease violated New Jersey's Truth in Consumer Contract, Warranty, and Notice Act (the "TCCWNA"), N.J.S.A. 56:12-15. In response, Defendant claims that the Lease is not a violation of the CLA, Regulation M, or the TCCWNA, and brings breach of contract and unjust enrichment counterclaims against Plaintiff. Presently before the Court, Defendant moves for summary judgment and Plaintiff requests leave to amend the Complaint.

For the reasons set forth below, Defendant's Motion for Summary Judgment is denied and Plaintiff's Motion for Leave to File an Amended Complaint is granted.

1

## I.    Background

The following facts are undisputed unless otherwise indicated. On or about January 21, 2013, Plaintiff executed the Lease, which provides that in exchange for 180 payments in periodic installments over the next fifteen years, Defendant would install a solar energy system (the "Solar Equipment") on the roof of Plaintiff's residence. Def.'s Statement of Material Facts not in Dispute ("Def.'s Fact Statement") ¶¶ 2-3; Pl.'s Resp. to Def.'s Statement of Material Facts not in Dispute ("Pl.'s Fact Statement") ¶¶ 2-3. The Lease states that each of Plaintiff's periodic payments would be $75.46 each; and the total cost of these payments over the course of fifteen years would be $13,582.80. Def.'s Fact Statement ¶ 3; Pl.'s Fact Statement ¶ 3. Some time after Plaintiff signed the Lease, the Solar Equipment was installed on Plaintiff's roof. Beginning in October 2013 and continuing thereafter, Defendant mailed Plaintiff multiple invoices requesting that she make payments under the Lease. As of September 2014, Plaintiff had not made any of these payments. Consequently, Defendant's attorney sent a letter, dated September 19, 2014, to Plaintiff, informing her that as of that date, she owed Defendant $36,426.60, which consisted of the total unpaid rent through July 2014 ($754.60) plus liquidated damages due under the Lease ($35,672.00).

On October 30, 2014, Plaintiff filed her initial Complaint, alleging that the Lease violates the CLA and Regulation M (Count 1) because it fails to clearly and conspicuously disclose: (1) the payment schedule, payment amounts, and payment periods; (2) the early termination right; and (3) Plaintiff's option to purchase the Solar Equipment at the end of the lease . 15 U.S.C. § 1667a; 12 C.F.R. §§ 1013.3, 1013.4. Plaintiff also alleges that because the Lease violates the CLA and Regulation M, it also violates the TCCWNA (Count 2). N.J.S.A. 56:12-15. As remedies, Plaintiff seeks actual damages, statutory damages, and attorney's fees and court costs. On December 15, 2014, Defendant responded with an Answer, which it amended on January 5, 2015, to include

2

breach of contract and unjust enrichment counterclaims against Plaintiff. Defendant seeks actual damages, as well as attorney's fees and court costs. On January 26, 2015, Plaintiff answered Defendant's counterclaims.

Before any discovery, Defendant moves for summary judgment on all of Plaintiff's claims. In her opposition brief, Plaintiff raises a number of new theories, not previously alleged in her Complaint, as to how the Lease violates the CLA and Regulation M. In addition, Plaintiff requests leave to file an amended complaint to plead these new theories. Plaintiff's proposed amended complaint does not add any new parties, or assert new facts or new causes of action, but only seeks to plead several additional manners in which the Lease violates the CLA and Regulation M under Count 1. Proposed Am. Compl. ¶¶ 16-27. Specifically, Plaintiff asserts two new violations under the CLA and Regulation M: (1) that the Lease failed to disclose certain information in a segregated manner, in violation of 12 C.F.R. § 1013.3(a), and (2) that the Lease's liquidated damages formula and resulting charges are substantively unreasonable, in violation of 15 U.S.C. § 1667b(b). Proposed Am. Compl. ¶¶ 19, 21, 26. Plaintiff's proposed amended complaint also redefines the Class by limiting the Class' allegations to the portions of the Lease in dispute and clarifying that the Class period extends only as far as permitted by the CLA's statute of limitations. Proposed Am. Compl. ¶ 29. In response, Defendant opposes Plaintiff's motion for leave to file an amended complaint, arguing that (1) there has been unexplained and undue delay in bringing the motion and (2) Plaintiff's amendment would be futile.

## II.    Motion to Amend Complaint

Rule 15(a) states that a party may amend her pleading once, as a matter of course, within twenty-one days of serving her original Complaint or within twenty-one days of the earlier of service of a responsive pleading or service of a motion under Rule 12 (b), (e), or (f). Fed. R. Civ.

3

P. 15(a). Here, Defendant filed its Amended Answer to Plaintiff's Complaint on January 5, 2015. Plaintiff missed the window to amend her Complaint as a matter of course, and instead, on April 24, 2015, approximately three and a half months after Defendant filed its Amended Answer and Counterclaim, she moved for leave to amend.

If a party no longer may amend her complaint as a matter of course, she must acquire the opposing party's consent or the leave of the court to amend.[1] *Id.* "The court should freely give

---

[1] Plaintiff contends that, pursuant to Fed. R. Civ. P. 15(b)(2), Defendant "effectively consented by its conduct" to resolve the new theories of liability raised in the proposed amended complaint through the pending motion for summary judgement, because Defendant argued the substantive merits of the proposed amendment in its summary judgment briefing. Pl.'s Reply Mem. of Law in Supp. of Mot. for Leave to File Am. Compl. ("Pl.'s Reply Mem.") p 3. Under Rule 15(b)(2), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." When analyzing whether there has been implied consent, courts look to "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." *Addie v. Kjaer*, 737 F.3d 854, 867 (3d Cir. 2013) (citation and internal quotations omitted). Additionally, "an issue has not been tried by implied consent if evidence relevant to the new claim is also relevant to the claim originally pled, because the defendant does not have any notice that the implied claim was being tried." *Id.* (citation and internal quotations omitted). Currently, there is a circuit split as to whether Rule 15(b)(2) applies on summary judgment, and the Third Circuit has not yet ruled on this issue. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 327 n. 7 (3d Cir. 2012) ("Courts of Appeals for the D.C., Ninth, and Eleventh Circuits have concluded that Rule 15(b), captioned 'Amendments During and After Trial,' may not apply to pretrial motions because the Rule is designed to address discrepancies between pleadings and evidence introduced at trial. However, other circuits have applied Rule 15(b) at the summary judgment stage. We decline to address the issue today because resolution of it is unnecessary to the disposition of this case." (citing those circuits declining to apply Rule 15(b) at summary judgment: *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 n. 3 (D.C. Cir. 1997); *Crawford v. Gould*, 56 F.3d 1162, 1168-69 (9th Cir. 1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990); and those applying Rule 15(b) at summary judgment: *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 569 (2d Cir. 2000); *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1279-80 (10th Cir. 1998); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992); *Walton v. Jennings Cmty. Hosp., Inc.*, 875 F.2d 1317, 1320 n. 3 (7th Cir. 1989); *Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir. 1987).)). Here, I need not resolve the question of whether to apply Rule 15(b) at the summary judgment stage, because the evidence relevant to Plaintiff's new legal theories, the Lease and associated documents, is also

4

leave when justice so requires." *Id*. This decision to grant or deny leave to amend a complaint is committed to the discretion of the district court. *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 518 (3d Cir. 1988). Courts liberally give leave to amend, because pleading is not "a game of skill in which one misstep by counsel may be decisive to the outcome," but rather "the purpose of pleading is to facilitate a proper decision on the merits." *United States v. Hougham*, 364 U.S. 310, 317 (1960) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)) (internal quotations omitted). Moreover, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of the discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Indeed, in explaining Rule 15(a), the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'

*Id*. However, a district court may deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile. *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007).

---

relevant to her original claims. Moreover, Defendant has explicitly opposed both amending the Complaint to incorporate Plaintiff's new legal theories and addressing the theories at the summary judgment stage. Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Leave to Amend her Compl. ("Def.'s Opp'n Mem."); Def.'s Reply Mem. of Law in Further Supp. of Def.'s Mot. for Summ. J. Dismissing Pl.'s Claims p 9. Because Defendant has not given implied consent, Rule 15(b)(2) cannot apply.

### a. Undue Prejudice, Undue Delay, and Bad Faith

Defendant argues that Plaintiff's motion for leave to amend should be denied on the grounds that (1) there has been unexplained and undue delay in bringing the motion and (2) Plaintiff's amendments would be futile. Generally, undue prejudice is the "touchstone" for denial of leave to amend. *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981). Undue prejudice occurs when the non-moving party is "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [moving party] been timely." *Id.* at 426 (citation omitted). Incidental prejudice is not a sufficient reason to deny leave to amend; rather, any resulting prejudice must be truly "undue." *Id.* Here, Defendant would not suffer any undue prejudice, and Defendant has not asserted such. Indeed, Plaintiff's amendment is brought before any discovery has begun, and therefore Defendant is not deprived of the opportunity to present any facts or evidence.

Absent a showing of undue prejudice to the non-moving party, "denial must be grounded in [the moving party's] bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure a deficiency by amendments previously allowed or futility of amendment." *Id.* at 425; *see also Hewlett-Packard Co. v. Arch Assoc. Corp.*, 172 F.R.D. 151, 153 (E.D. Pa. 1997). Defendant argues that Plaintiff has unduly delayed the filing of her motion. However, the Third Circuit has held that "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay; delay alone is an insufficient ground to deny leave to amend." *USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004) (quoting *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001)) (internal quotations omitted). At some point, delay becomes undue when it places an unwarranted burden on the court, or a prejudicial or unfair burden on the opposing party. *USX*, 395 F.3d at 167-68 (3d Cir. 2004) (citing *Cureton*, 252 F.3d at 273).

Significantly, delay may become undue when there has been previous opportunity to amend the complaint. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (three year lapse between the filing of the complaint and the proposed amendment was "unreasonable" delay when plaintiff had previous opportunities to amend). Where the non-moving party asserts undue delay, "the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay in asserting the motion." *Coventry*, 856 F.2d at 520. Here, Plaintiff's motion for leave to amend does not place an unwarranted burden on the court or an unfair burden on the opposing party, because only three and half months have elapsed since the filing of the Counterclaim and discovery has not begun. Moreover, I do not agree with Defendant's assertion that Plaintiff purposefully delayed filing her motion to amend. Rather Plaintiff's amendments appear to be responsive to Defendant's early filed, pre-discovery, summary judgment motion. I stress that Plaintiff does not seek to bring new causes of action, but rather buttresses her current claims with new legal theories. I do not find that any delay exists or that Plaintiff has acted in bad faith.

> b. *Futility*

Furthermore, Defendant argues that the new legal theories that Plaintiff raises in her proposed amended complaint are futile, and thus Plaintiff's motion for leave to amend should be denied. A district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss, or in other words, where the amendment would be futile. *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983). In assessing the futility of an amendment, the court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *MedPointe Healthcare Inc. v. Hi-Tech Pharmacal Co.*, 380 F. Supp. 2d 457, 462 (D.N.J. 2005) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Plaintiff

asserts two new theories of liability in her proposed amended complaint: (1) that in violation of Regulation M section 1013.3(a), the Lease did not disclose in a segregated manner the following items: (a) the amount due at lease signing, (b) a payment schedule and total of periodic payments, (c) other charges, (d) the total of payments, (e) a statement of purchase option, if permitted, and purchase option price, and (f) a statement referencing the non-segregated disclosures; and (2) that in violation of the CLA section 1667b(b), the Lease's liquidated damages formula and resulting charges are substantively unreasonable. Defendant argues that each of these additions is futile.

Plaintiff also seeks to refine the Class definition in the proposed amended complaint. However, Defendant has made no argument that such changes to the Class definition are futile. Therefore, the Court need not examine this amendment here.

     i.   <u>Standard of Review</u>

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). The factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). As the Third Circuit summarized:

> 'stating . . . [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.

*Phillips,* 515 F.3d at 234 (quoting *Twombly,* 550 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Additionally, a claim for relief must be plausible. *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).

Moreover, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. . . [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Pa. Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 97 n. 6 (3d Cir. 2010) (quoting *Burlington,* 114 F.3d at 1426) (internal quotations omitted). Because Plaintiff has attached the Lease to her proposed amended complaint, and because she explicitly relies upon the Lease in her proposed amended complaint, the Court will rely on the Lease when necessary to clarify Plaintiff's allegations. *See Burlington,* 114 F.3d at 1426 ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." (citation and internal quotations omitted)).

9

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc*., 627 F.3d at 98. That said, the Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 556 U.S. at 684) (internal quotations omitted).

    ii.   <u>Analysis</u>

    *1)  <u>Segregated Items</u>*

The sections of Regulation M at issue in this case generally seek to ensure that consumer lessees of personal property receive meaningful disclosures that enable them to easily and accurately compare lease terms between leases.12 C.F.R. § 1013.1; *Applebaum v. Nissan Motor Acceptance Corp.*, 226 F.3d 214, 218 (3d Cir. 2000). To that end, Regulation M section 1013.4 requires that lessors disclose certain information in a consumer lease, if applicable. Section 1013.3(a) of Regulation M, in turn, requires that all information listed in section 1013.4 be disclosed "clearly and conspicuously." Additionally, section 1013.3(a) further requires that a subgroup of the items listed in section 1013.4 be segregated from other information and that the headings, content, and format be presented in a manner substantially similar to the applicable model contract provided in Appendix A of Regulation M. 12 C.F.R. § 1013.3(a), App. A. This subgroup of items includes the following:

> (b) Amount due at lease signing or delivery. The total amount to be paid prior to or at consummation or by delivery . . . The lessor shall itemize each component by type and amount, including any refundable security deposit, advance monthly or other periodic payment, and capitalized cost reduction.
> (c) Payment schedule and total amount of periodic payments. The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments.
> (d) Other charges. The total amount of other charges payable to the lessor, itemized by type and amount, that are not included in the periodic payments. Such

charges include the amount of any liability the lease imposes upon the lessee at
the end of the lease term.
(e) Total of payments. The total of payments, with a description such as 'the
amount you will have paid by the end of the lease.' This amount is the sum of the
amount due at lease signing (less any refundable amounts), the total amount of
periodic payments (less any portion of the periodic payment paid at lease
signing), and other charges . . .
(i) Purchase option. A statement of whether or not the lessee has the option to
purchase the leased property, and . . . [i]f at the end of the lease term, the purchase
price; and . . . [i]f prior to the end of the lease term, the purchase price or the
method for determining the price and when the lessee may exercise this option.
(j) Statement referencing nonsegregated disclosures. A statement that the lessee
should refer to the lease documents for additional information on early
termination, purchase options and maintenance responsibilities, warranties, late
and default charges, insurance, and any security interests, if applicable.

12 C.F.R. §§ 1013.4(b), (c), (d), (e), (i), (j). Of the model forms provided in Appendix A,

Plaintiff and Defendant both compare the Lease to Form A-3, Model Furniture Lease

Disclosures, (the "Model Form"), the applicable model in the instant case. 12 C.F.R. § 1013,

App. A; Def.'s Opp'n Mem. p. 14; Pl.'s Reply Mem. p. 9. Lessors may make changes to the

model form, but the information contained in the altered contract must be presented in a manner

substantially similar to the model form. 12 C.F.R. § 1013, Supp. I, Comment 1 to App. A. In

order to remain substantially similar, "any changes should be minimal" and not "so extensive as

to affect the substance and the clarity of the disclosures." *Id.*

    Defendant does not assert that the Lease is not a consumer lease, under the meaning of

the CLA and Regulation M, nor that Defendant is not a lessor or that Plaintiff is not a lessee. 15

U.S.C.A. § 1667. Thus, at issue is not whether the CLA and Regulation M apply, but rather

whether the Lease has violated this statute and regulation. There are six items that Plaintiff

contends have not been segregated in a substantially similar manner in the Lease: (1) the amount

due at lease signing, (2) the payment schedule and total of periodic payments, (3) other charges,

(4) the total of payments, (5) a statement of purchase option, if permitted, and purchase option

11

price, and (6) a statement referencing the non-segregated disclosures. The first two pages of the Model Form provide this information in a series of separate boxes and tables. *See* Model Form pp 1-2. To respond, Defendant first argues that it has no "other charges" to disclose, and therefore it is not required to provide a segregated "other charges" section under Regulation M. Additionally, although Defendant does not dispute that the remaining five items must be disclosed on the Lease, it contends that the Lease conforms to Regulation M by presenting these items in a manner substantially similar to the Model Form.

As to the category "other charges," Defendant argues that this disclosure is not applicable to the Lease, because there are no other charges payable to the lessor that are not included in the periodic payments, since all of the charges made under the Lease are already included in the periodic payments. Indeed, a lessor "may delete any disclosures that are inapplicable to a transaction without losing the Act's protection from liability." 12 C.F.R. § 1013, Supp. I, Comment 1 to App. A. Since Regulation M only requires segregated disclosures be made "as applicable," the "other charges" disclosure is not necessary, because Defendant has no other charges to disclose. *See* 12 C.F.R. § 1013.3(a). Plaintiff did not address this argument in her response brief, nor did she specifically allege in her proposed amended complaint what these missing "other charges" are. Therefore, because Plaintiff does not allege which "other charges" are missing, this aspect of Plaintiff's proposed amended complaint is futile.

However, as to the remaining five items, Defendant does not dispute that they must be disclosed on the Lease. Rather, the parties disagree as to whether they have been properly disclosed. First, the Model Form includes a segregated box entitled "Amount Due at Lease Signing," Model Form p 1, while the Lease contains a segregated box entitled "Itemization of Additional Charges Due at Lease Signing." Lease p 1. Plaintiff argues that because the Lease's

section title includes the word "additional," it implies that there is a second section with other information about charges due at signing. Plaintiff argues that this deviates too far from the Model Form, which makes clear that there is only one section regarding the amount due at the signing of the lease. Defendant, on the other hand, argues that this change is minimal and does not alter the meaning of section. However, it is plausible that inserting the word "additional" to this section could confuse the lessee and detract from the section's clarity. Therefore, under the facts alleged by Plaintiff, this section of the Lease may not be substantially similar to the Model Form.

Second, the Model Form provides only one segregated box, entitled "Monthly Payments" for the payment schedule and total periodic payments. Model Form p 1. On the other hand, the Lease provides a larger box entitled "Schedule of Payments" with sub-boxes entitled "Term (in months)," "Number of Payments," "Amount of Each Periodic Payment," and "Total Payments (The amount you will pay after you have made all scheduled payments.)." Lease p 1. Plaintiff argues that these segregated boxes are not substantially similar, particularly since unlike the Model Form, the Lease does not provide specific dates for when payments will come due. Defendant contends that these changes do not affect the substance or clarity of this provision. However, by definition, failing to include the payment dates changes the substance of this section. Unlike the Model Form, a consumer looking at the first page of the Lease would not be able to determine when her first payment is due or on what date of each month her subsequent payments are due. Thus, under these alleged facts, this section of the Lease does not appear to be substantially similar to the Model Form.

Third, the Model Form provides a segregated box entitled "Total of Payments (The amount you will have paid by the end of the lease)," Model Form p 1, while the Lease's only

corresponding box is under the subheading "Monthly Payments" and is entitled "Total of

Payments (The amount you will pay after you have made all scheduled payments.)." Lease p 1.

Plaintiff argues that this language is substantively different from the Model Form, and that

Defendant is required by the statute to provide two separate boxes: one to display the total

periodic payments and one to display the total sum of payments made under the Lease.

Defendant counters that because monthly payments are the only payments Plaintiff will have to

make under the Lease, an additional "Total of Payments" section is unnecessary. However, in the

Model Form, the "Total of Payments" section adds up the totals of the "Amount Due at Lease

Signing" section as well as the "Monthly Payments" and "Other Charges" sections. Moreover,

Regulation M defines the "Total of Payments" as the "sum of the amount due at lease signing

(less any refundable amounts), the total amount of periodic payments (less any portion of the

periodic payment paid at lease signing), and other charges . . ." 12 C.F.R. § 1013.4. Because the

Lease includes sections equivalent to the "Amount Due at Lease Signing" and "Monthly

Payments" sections, for the sake of clarity, it should also include a "Total of Payments" section

adding the totals of these two sections. For this reason, under the facts alleged by Plaintiff, the

Model Form's "Total of Payments" section appears to be applicable here, and should have been

included in the Lease.

Fourth, the Model Form contains, in bolded language, "Purchase Option at End of Lease

Term" and sample language that is non-bolded, which reads "[You have an option to purchase

the leased property at the end of the lease term for $_____ [and a purchase option fee of

$_____].]" Model Form p 1. In this regard, the Lease contains the following language, entirely

in bold, in a paragraph with other terms: "THIS IS A LEASE. YOU ARE NOT BUYING THE

SOLAR EQUIPMENT ALTHOUGH YOU MAY HAVE THE RIGHT TO DO SO UPON

EXPIRATION OF THE TERM OF THE LEASE." Lease p 1. It is only elsewhere in the Lease that it is explained that sixty days prior to the end of the lease term, an appraiser from the American Society of Appraisers will determine the purchase option price. Lease § 8. Plaintiff asserts that this disclosure is problematic because the disclosure is not properly segregated from other information and the disclosure does not include the purchase option price. To the contrary, Defendant argues that its changes to this section of the Model Form did not change the substance or the clarity of the disclosure. While Defendant is correct that Regulation M allows lessors in lieu of providing a sum certain option price to provide a sum "to be determined at a future date by reference to a readily available independent source," 12 C.F.R. § 1013, Supp. I, Comment 5 to § 1013.4(i), this sum was not properly displayed on the front page, in a manner substantially similar to the Model Form. Moreover, contrary to the segregation requirements of Regulation M section 1013.3(a), the language of this section is displayed in a paragraph containing other disclosures. Thus, Plaintiff has sufficiently alleged that this section of the lease does not satisfy regulation M's requirement that this information be segregated, or that this information be displayed in a manner substantially similar to that of the Model Form.

Finally, the Model Form includes a segregated section which states in bold "Other Important Terms." and non-bolded language that reads "See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable." Model Form p 1. Contrary to the Model Form, the Lease has bolded language stating "PLEASE READ CAREFULLY THE GENERAL TERMS AND CONDITIONS CONTAINED ON THE OTHER PAGES AND ATTACHMENTS OF THIS LEASE," which is included in the same paragraph as other terms. Lease p 1. Plaintiff contends that this disclosure is not properly segregated from

other unrelated information. Additionally, Plaintiff argues that because the Lease's disclosure does not list the specific categories of additional information contained in the agreement, it is not substantially similar to the Model Form. Defendant counters that this disclosure satisfies the format and substance requirements of Regulation M. Nonetheless, as with the purchase option section, including this information in a paragraph with other information runs contrary to Regulation M's explicit requirement that such information be "segregated from other information." 12 C.F.R. § 1013.3(a)(2). Moreover, Defendant's changes to the Model Form's language substantively alter its meaning, because it no longer informs the consumer which additional terms are contained in the body of the agreement. Therefore, taking Plaintiff's alleged facts as true, the Lease does not present this information in a manner substantially similar to the Model Form.

Under the facts alleged by Plaintiff, the following items do not appear to have been disclosed on the Lease in a manner substantially similar to the Model Form, pursuant to Regulation M section 1013.3(a): (1) the amount due at lease signing, (2) the payment schedule and total of periodic payments, (3) the total of payments, (4) a statement of purchase option, if permitted, and purchase option price, and (5) a statement referencing the non-segregated disclosures. However, Plaintiff has not alleged the facts necessary to demonstrate that there are any "other charges" that must be disclosed pursuant to Regulation M section 1013.3(a). Since under Rule12(b)(6) the Court must only dismiss a claim if there is no reasonable reading of the complaint under which a plaintiff may be entitled to relief, Plaintiff's claims that the above items, except for "other charges," have not been properly segregated or displayed, under Regulation M section 1013.3(a) are not futile.

2) *Unreasonable Liquidated Damages*

16

Under the CLA section 1667b(b), any liquidated damages clause in a consumer lease must be "reasonable in the light of the anticipated or actual harm caused by the delinquency, default, or early termination, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." *Miller v. Nissan Motor Acceptance Corp.,* 362 F.3d 209, 217 (3d Cir. 2004) (quoting 15 U.S.C. § 1667b(b)). In short, a liquidated damages clause can be considered reasonable where it is designed to make the lessor whole.

Defendant's Counterclaim alleges that pursuant to the Lease's early termination clause, Plaintiff owes Defendant $36,426.60, consisting of the total unpaid rent through July 2014, $754.60, plus liquidated damages of $35,672.00. Countercl. ¶ 17. In this regard, Section 22(b) of the Lease stipulates that in the event of a "Default," the lessor may demand the lessee pay the sum of (1) any accrued unpaid rent and (2) liquidated damages, referred to as the "Stipulated Loss Value." Default under the Lease includes any failure to pay rent within ninety days of its due date. Lease § 22(a). According to Defendant, Plaintiff defaulted in July 2014, and therefore owes any accrued rent as of that date, as well as the Stipulated Loss Value. Countercl. ¶ 17. The Stipulated Loss Value varies based on the year of Default and it is calculated by multiplying a set yearly $/watt rate ($5.20/watt in 2014) by the predicted number of watts that will be produced by the Solar Equipment (6,860 watts). Lease p 1, §§ 16, 22, Ex. B. Multiplying $5.20/watt by 6,860 watts results in a $35,672 Stipulated Loss Value.

Defendant argues that the liquidated damages clause is "expressly designed to calculate liquidated damages for loss of a bargain and not as a penalty, and . . . to maintain [Defendant's] originally anticipated after-tax yield." Def.'s Opp'n Mem. p 17 (internal quotations omitted). In support of its argument, Defendant relies on section 16 of the Lease, which defines the Stipulated Loss Value as "the amount, in the reasonable but sole opinion of [Defendant], which is necessary

17

as of the date of any loss event (including a Default or other event triggering a payment obligation), to maintain [Defendant's] originally anticipated after-tax yield from the Lease during the Term . . . ." However, neither the Lease nor Defendant explain how Defendant determined that the $/watt rates set forth on Exhibit B or the wattage amount were necessary to maintain Defendant's after-tax yield. This is especially confounding when Defendant's gross income under the Lease would have been at most, only about $17,698.80; calculated by adding the total anticipated periodic payments ($13,582.80) and the estimated option price to purchase the Solar Equipment at the end of the lease term ($4,116). Lease p 1, § 8, Ex. B.

I cannot conclude on the basis of the Lease alone that the liquidated damages clause is, in fact, reasonably calculated to make Defendant whole. Indeed, based on the discrepancy between the liquidated damages and Defendant's originally anticipated payout, it is plausible that, as Plaintiff alleges, the liquidated damages clause is "unreasonable" and not tied to Defendant's injuries in the event of a default. Because under a Rule 12(b)(6) review, Plaintiff's claim will survive if it merely states a plausible claim for relief, Plaintiff's claim that the liquidated damages clause is unreasonable under the CLA section 1667b(b) is not futile.

In sum, Plaintiff brings her motion to amend her Complaint without delay, much less undue delay. Moreover, allowing Plaintiff to amend her Complaint would not cause Defendant any undue prejudice. Finally, the Court has determined that the bulk of Plaintiff's new legal theories in the proposed amended complaint are not futile under a Rule 12(b)(6) review. Consequently, justice requires that Plaintiff's motion for leave to amend the Complaint is granted.

## III.  Motion for Summary Judgment

In Count 1 of her original Complaint, Plaintiff alleges that, in violation of the CLA and Regulation M, the Lease fails to clearly and conspicuously disclose: (1) the payment schedule,

18

payment amounts, and payment periods; (2) the early termination right; and (3) Plaintiff's option to purchase the Solar Equipment at the end of the lease. Plaintiff also alleges in Count 2 of her original Complaint that because the Lease does not conform to the CLA, it also violates the TCCWNA. On this motion for summary judgement, Defendant argues that the Lease and the accompanying sales proposal (the "Sales Proposal") clearly and conspicuously disclose such information. Additionally, Defendant argues that the Lease does not violate the TCCWNA. Plaintiff opposes Defendant's motion.

In her opposition brief, Plaintiff raises a number of new theories, not previously alleged in her Complaint, under Count 1, including: (1) that certain information in the Lease was not adequately segregated and (2) that the liquidated damages under the Lease are substantively unreasonable. As discussed above, the Court will allow Plaintiff to amend the Complaint to incorporate these new theories of liability. However, also before the Court is the question of whether it may consider Plaintiff's new theories on this summary judgement review.

The Third Circuit has found that a court may only consider legal theories set forth in a party's brief to the extent that they find support in the factual allegations set forth in the complaint. *Com. of Pa. ex rel. Zimmerman v. PepsiCo*, Inc., 836 F.2d 173, 181 (3d Cir. 1988). This is grounded in the concept that a defendant must be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 179 (quoting *Conley*, 355 U.S. at 47-48); *see also Twombly*, 550 U.S. at 555. Defendant argues in its reply brief that because Plaintiff's new theories were not alleged in the Complaint, Defendant has not had sufficient notice to address them. Plaintiff counters that her broad allegation in the Complaint that the "Lease fails to conform to the CLA and Regulation M and is defective" should have put Defendant on notice of these theories. In support of this contention, Plaintiff cites *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014),

19

in which the Supreme Court found that to survive a motion for summary judgment, a plaintiff need not expressly invoke a statute where she had sufficiently alleged facts upon which relief might be granted under such statute. *Johnson*, 135 S. Ct. at 347. However, the facts in this case are not comparable to *Johnson*, indeed they are exactly opposite. Here, Plaintiff has expressly invoked the statute, but failed to allege the necessary facts on which to base her new theories of liability. A broad pleading that a contract violates a statute, without alleging facts specifying how the statute was violated or which portions of the contract are at issue cannot possibly provide the defendant with sufficient notice to marshal a defense. *See Conley*, 355 U.S. at 47-48. Because Defendant has not had sufficient notice of Plaintiff's segregation and reasonableness theories, it is not appropriate to consider them upon this summary judgement review. Therefore, at present, the Court will only review theories of liability that Plaintiff alleged in her original Complaint; namely that the Lease did not disclose certain information in a clear and conspicuous manner.

Additionally, the parties dispute whether the Court should consider the Sales Proposal in addition to the Lease, when evaluating whether Defendant made the requisite disclosures. The Sales Proposal is a packet of documents that Defendant provided to Plaintiff along with the Lease. Def.'s Fact Statement ¶ 16; Pl.'s Fact Statement ¶ 16. Regulation M section 1013.3(a)(1) provides that disclosures may be made "either in a separate statement that identifies the consumer lease transaction or in the contract or other document evidencing the lease." This separate statement must be dated and identify the lessor and the lessee. Defendant argues that the Sales Proposal should be considered a separate disclosure statement, and thus a viable avenue, under Regulation M, through which to disclose information to lessees. However, the regulation does not allow lessors to make disclosures across an unlimited number of documents. Rather, the regulation specifies that lessors may make disclosures on only one document, *either* in a separate statement

*or* in the contract. 12 C.F.R. § 1013.3(a)(1). Indeed, this contention is supported by additional language in section 1013.3(a)(1) which provides an exception to the requirement that the disclosures be made on only one document, stating: "[a]lternatively, the disclosures required to be segregated from other information under paragraph (a)(2) of this section may be provided in a separate dated statement that identifies the lease, and the other required disclosures may be provided in the lease contract or other document evidencing the lease." *Id.* Here, the Sales Proposal does not fall within this exception, because it does not solely provide segregated information. Therefore, Defendant may only rely on the Lease as the one document to fulfill the disclosure requirements of the CLA and Regulation M.

    *a.   Standard of Review*

    Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* at 251-52. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

    A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate specific facts showing that there is a genuine

issue for trial." *Id*. at 324 (citation and internal quotations omitted). Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading. *Id*. at 324. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to survive summary judgement review. *Anderson*, 477 U.S. at 252.

   *b.  Analysis*

   As discussed above, the CLA and Regulation M seek to ensure that consumer lessees of personal property receive meaningful disclosures that enable them to easily and accurately compare lease terms between leases. 12 C.F.R. § 1013.1; *Applebaum*, 226 F.3d at 218. Consequently, section 1013.4 of Regulation M requires that lessors disclose certain information in a consumer lease and section 1013.3(a) requires that this information be disclosed "clearly and conspicuously." For a disclosure to be clear and conspicuous, it must "be reasonably understandable" and "must be presented in a way that does not obscure the relationship of the terms to each other." 12 C.F.R. § 1013, Supp. I, Comment 2 to § 1013.3(a); *see also Applebaum*, 226 F.3d at 220. However, "reasonably understandable" does not mean that the language must be "within the understanding of the average consumer." *Applebaum*, 226 F.3d at 220 (citation and internal quotations omitted). Specifically, the disclosure "must be cast in a form that is reasonably understandable in light of the difficulty of the matter being disclosed. The benchmark is the nature of the matter discussed." *Id*. at 220 n. 6. Additionally, disclosures must be "legible, whether typewritten, handwritten, or printed by computer." 12 C.F.R. § 1013, Supp. I, Comment 2 to § 1013.3(a); *see also id.* at 220. Here, Plaintiff does not allege that any part of the Lease or Sales Proposal was illegible. Therefore, this summary judgment review turns on whether the requisite

information is reasonably understandable and presented in a way that does not obscure the relationship of the terms to each other.

Whether a contract's disclosures are clear and conspicuous is a question of law that can be resolved by analyzing the language of the document on its face, and therefore, is susceptible to summary judgment. *See e.g. Miller,* 362 F.3d at 219 (granting summary judgment, in part because contract on its face did not make the CLA required disclosures in a clear and conspicuous manner); *Applebaum*, 226 F.3d at 223 (denying summary judgment, in part because contract on its face did not make the CLA required disclosures in a clear and conspicuous manner). That said, however, Plaintiff contends that there remain questions of fact surrounding "[1] a very narrow fact issue about [Plaintiff's] receipt of the Lease and Sales Proposal, and [2] the reasonableness of the claimed damage formula for early termination or default." Pl.'s Br. Contra Def.'s Mot for Summ. J. ("Pl.'s Resp. Br.") p 3.

As to the first issue of fact, Plaintiff and Defendant disagree on whether Defendant's sales agent explained the details of the Sales Proposal when presenting it to Plaintiff. Def.'s Fact Statement ¶ 17; Pl.'s Fact Statement ¶ 17. However, Plaintiff does not explain why this fact is material to the claims at issue. Moreover, Plaintiff also argues that the Court may resolve the question of whether the information was disclosed in a clear and conspicuous manner on the sole basis of the Lease itself. There is, indeed, no reason why this disputed fact would be material to the question of whether the Lease adequately disclosed the information at issue. Therefore, I will not consider this disputed fact on this motion for summary judgement. Concerning the second issue of fact, as discussed above, Plaintiff did not allege that the liquidated damages formula was unreasonable in the original Complaint. Thus, it is not appropriate to review this theory of liability and the related disputed facts on this motion for summary judgment. Consequently, I can conclude

that there are no disputes of material fact as to the claims before the Court on this motion for summary judgment.

      i.   <u>Count 1: The CLA and Regulation M</u>

Section 1013.4(c) of Regulation M requires that a lessor disclose the "[p]ayment schedule and total amount of periodic payments. The number, amount, and due dates or periods of payments scheduled under the lease, and the total amount of the periodic payments." Defendant argues that the Lease discloses all of this information clearly and conspicuously. Specifically, the first page of the Lease states that the term of the lease is for 180 months, each periodic payment would be for $75.46, the total amount of the periodic payments would be $13,582.80, and explains that "[Plaintiff] will pay Rent in accordance with the due dates specified on [Plaintiff's] monthly invoice." Additionally, section 5 of the Lease states that "[Defendant] will include the periodic payment to be paid by [Plaintiff] to [Defendant] for the leasing of the Solar Equipment (the "Rent") in an invoice delivered by [Defendant] to [Plaintiff] for payment of the Rent (the "Monthly Invoice")" and that "Rent will be due in accordance with the terms set forth in the Monthly Invoice."

These disclosures appear to clearly and conspicuously disclose some of the required information, including: the number of payments (180), the amount of each payment ($75.46), and the total amount of the periodic payments ($13,582.80). However, as Plaintiff points out, none of the disclosures regarding lease payments provide the first date of the monthly payments or any subsequent due dates. Defendant argues that section 1013.4(c) only requires the disclosure of *either* due dates *or* periods of payments, and therefore this requirement is satisfied by specifying that payments are made on a "monthly" basis. However, simply specifying that payments will occur on a "monthly" basis does not sufficiently satisfy this burden, as Defendant contends. Such

a reading of the statute would mean that "consumers would not be entitled to know when their monthly payments were to begin (and, hence, end), a result completely at odds with the purposes of the [CLA]. Without giving at least a starting date, the term 'monthly' simply does not provide sufficient notice of the 'period of payments scheduled to repay the total of payments.'" *Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F. Supp. 1295, 1301, n 6 (D. Del. 1990) (refuting the same reading of identical language in a different subsection of the CLA). Without at least a first payment date to tie to the "monthly" periodic disclosure, the Lease does not satisfy the requirements of section 1013.4(c) of Regulation M.

Plaintiff also argues that the amount of each monthly payment is unclear, because in section 5 it says that the first month's rent will be prorated based on the length of time between the installation of the Solar Equipment and the end of the month. *See* Lease § 5. Plaintiff further argues that proration in section 5 directly contradicts the disclosure on the first page that the payments will consist of 180 equal payments. However, in light of the fact that proration is a tool commonly used in calculating lease payments, such terms can be considered reasonably understandable in this context. *See Applebaum*, 226 F.3d at 220 (applying the same reasoning to complex liquidated damages calculations).

Section 1013.4(g) of Regulation M requires that a lessor disclose a "statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term; and the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable." Defendant argues that the Lease discloses all of this information clearly and conspicuously. Specifically, section 6 of the Lease states that Defendant "shall have the right to terminate this Lease upon ninety (90) days notice to [Plaintiff]." Lease§ 6. Additionally, Defendant points to section 10 of the Lease, which reads

"[PLAINTIFF'S] OBLIGATION TO PAY RENT AND PERFORM HIS OR HER OBLIGATIONS HEREUNDER IS ABSOLUTE, IRREVOCABLE, AND UNCONDITIONAL." Lease § 10.

Plaintiff argues that because this information is spread out over multiple sections of the Lease, it cannot be reasonably understandable. In support of this proposition, Plaintiff cites, *Thomka v. A. Z. Chevrolet, Inc.*, 619 F.2d 246 (3d Cir. 1980), where the Third Circuit determined that scattering figures throughout multiple pages and sections in a lease did not clearly and conspicuously disclose the single lump sum figure of the "total amount paid" under the CLA. However, here, the required information, the conditions under which a lessor or lessee may early terminate, is fully stated in the Lease. *See Thomka*, 619 F.2d at 249 (3d Cir. 1980). Conversely, in *Thomka*, nowhere in the contract was the required "total amount paid" ever stated, instead the lessee had to add up numerous different figures to calculate this amount. While, as discussed above, the fact that this information is spread throughout multiple sections in the Lease will likely impact whether Defendant has satisfied the segregation and form contract requirements under section 1013.4, discussed *supra*, it does not prevent the information from being disclosed clearly and conspicuously.

Plaintiff also argues Section 6 of the Lease, which denies Plaintiff an early termination right, is not reasonably understandable because it does not specifically mention "early termination." However, using the term "early termination" is not necessary to state the conditions, or lack thereof, under which the lessee may terminate the contract early. Indeed, the statement that lessee's obligations are "unconditional" expressly discloses that there are no conditions under which she may choose not to fulfill these obligations, or terminate. Thus, the Lease discloses in a

clear and conspicuous manner the conditions under which both the lessee or lessor may terminate the lease prior to the end of the lease term.

In addition to the early termination conditions, section 1013.4(g) of Regulation M also requires that a lessor disclose "the amount or a description of the method for determining the amount of any penalty or other charge for early termination, which must be reasonable." This requires "a full description of the method of determining an early termination charge." 12 C.F.R. § 1013, Supp. I, Comment 2 to § 1013.4(g). Here, because the amount was not disclosed, the Court must analyze whether the method used to calculate the amount was revealed in a clear and conspicuous manner. *See Applebaum*, 226 F.3d at 220. Defendant argues that the following portions of the Lease clearly and conspicuously disclose this calculation: Section 22(b) of the Lease stipulates that in the event of a "Default," the lessor may demand the lessee pay the sum of (1) any accrued unpaid rent and (2) liquidated damages, referred to as the "Stipulated Loss Value." Section 16 of the Lease states that the Stipulated Loss Value is "set forth on Exhibit B." Exhibit B to the Lease contains a table entitled "NJR Stipulated Loss Value in the event of Default or other event triggering a payment obligation." This table has two columns: one entitled "Year," which lists years 2012 through 2026, and one entitled "Stipulated Loss $/Watt Installed," which lists dollar amounts ranging from $5.91 to $1.69. Lease Ex. B. Finally, the front page of the Lease includes a section titled "Number of kW Installed" with the number 6.860.

Defendant explains, that based on this information, a lessee should be able to determine the year of default, find the corresponding Stipulated Loss $/Watt rate on the table in Ex. B, and multiply that rate by the number of watts installed, provided on the front page. For example, in the instant case, since Plaintiff's alleged default occurred in 2014, to calculate her liquidated damages she should find the corresponding rate on the table ($5.20/watt) and multiply it by the

27

number of watts on the front page(6.869 kW or 6,869 kilowatts) to find the liquidated damages amount ($35,672). However, these sections of the Lease do not provide a "full description" of the formula to calculate damages, and instead assume that a lessee reading this language will make certain leaps of logic. For example, nowhere in the Lease does it explain that lessee must determine the year of Default and use the rate corresponding to that year in the table in Exhibit B for her calculation. For all the lessee knows, the years in the Exhibit B table could correspond to the date the lease was signed, rather than the date of default. Additionally, it is not self-evident from the title "Stipulated Loss $/Watt Installed" in the Exhibit B table, that the lessee should multiply the dollar amount in that column by the "Number of kW Installed" amount on the front page. These vague references to the liquidated damages formula are not sufficient to provide "a full description of the method of determining an early termination charge." 12 C.F.R. § 1013, Supp. I, Comment 2 to § 1013.4(g); *see e.g. Miller*, 362 F.3d at 218-19 (finding that lessors did not adequately disclose the method of calculating an early termination charge); *Applebaum, 226 F.3d at 221* (finding that lessors did adequately explain the method of calculating an early termination charge).

Section 1667a(5) of the CLA requires lessors to disclose "whether or not the lessee has the option to purchase the leased property and at what price and time." Correspondingly, section 1013.4(i) of Regulation M specifies that a lessor must disclose a "statement of whether or not the lessee has the option to purchase the leased property, and . . . [i]f at the end of the lease term, the purchase price; and . . . [i]f prior to the end of the lease term, the purchase price or the method for determining the price and when the lessee may exercise this option." If the purchase price is to be determined at a future date, lessors must "reference to a readily available independent source" and provide sufficient information "so that the lessee will be able to determine the actual price when

28

the option becomes available." 12 C.F.R. § 1013, Supp. I, Comment 5 to § 1013.4(i). The option

purchase price may not be defined as a price to be negotiated by the parties at a later date or the

future fair market value, because this will not allow the lessee to determine the actual price when

the option comes due. *Id.* Defendant argues that Section 8 of the Lease adequately discloses this

information as follows:

> So long as [Plaintiff] has not committed any Default under this Lease, and subject
> to the conditions stated herein, [Defendant] hereby grants to [Plaintiff] a non-
> assignable option to purchase all (but not less than all) of the Solar Equipment
> described in this Lease on the Expiration Date for an amount equal to the then fair
> market value of the Solar Equipment (the "Option Price") . . . The attached Exhibit
> B shows [Defendant's] estimate of the fair market value of the Solar Equipment at
> the end of the Term; these estimates are provided herein for general informational
> purposes and should not be assumed to be the applicable Option Price. [Defendant]
> shall deliver notice to [Plaintiff] 180 days prior to the Expiration Date (the
> "Purchase Notice") indicating the Expiration Date and [Plaintiff's] option to
> purchase the Solar Equipment pursuant to this Lease, and [Plaintiff] shall have sixty
> (60) days from the date of the Purchase Notice to provide notice to [Defendant] of
> its intent to purchase the Solar Equipment, subject to agreement on the Option Price
> . . . the Option Price will be determined by an American Society of Appraisers (or
> any successor thereto) certified appraiser selected by [Defendant] and such
> appraiser will notify both [Plaintiff] and [Defendant] of the Option Price by a date
> no later than sixty (60) days prior to the Expiration Date.

Despite Plaintiff's argument to the contrary, Section 8 of the lease appears to clearly and

conspicuously disclose that: (1) Plaintiff has an option to purchase the Solar Equipment at the end

of the lease term, and (2) Plaintiff may exercise this option 120 days before the end of the lease

term. However, the method that Defendant has provided to determine the option purchase price

does not satisfy the requirements of Regulation M. The Lease explains that the option purchase

price will be determined by a member of the American Society of Appraisers, which could be

considered a "readily available independent source." *See* 12 C.F.R. § 1013, Supp. I, Comment 5

to § 1013.4(i). However, under the terms of the Lease, the appraiser will not provide its appraisal

price until sixty days after the lessee's deadline to provide notice of its intent to purchase the Solar

Equipment. Thus, this appraisal method will not allow the lessee "to determine the actual price *when the option becomes available,*" *id.* (emphasis added), but instead requires the lessee to commit to the purchase option with no knowledge of the purchase price. Additionally, Defendant's argument that the estimated purchase price provided on Exhibit B would be a sufficient substitute for a readily available independent source, is unreasonable, because the Lease explicitly states that the estimate "should not be assumed to be the applicable Option Price." Defendant cannot expect lessors to rely on estimates that, as it explicitly states, may not be applicable. Therefore, this disclosure does not satisfy the requirements of the CLA or Regulation M, and Defendant's motion for summary judgment on Count 1 is denied.

      ii.   <u>Count 2: The TCCWNA</u>

Count II of the Complaint alleges that Defendant violated the TCCWNA, which provides in, pertinent part, as follows:

> No . . . lessor . . . shall in the course of his business . . . enter into any written consumer contract . . . after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a . . . lessor . . . as established by State or Federal law at the time . . . the consumer contract is signed . . .

N.J.S.A. 56:12-15. Plaintiff contends that her legal rights, established under the CLA, were violated when Defendant failed to make the statutorily required disclosures in the Lease. To recover under the TCCWNA, a plaintiff must show that "(1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer a contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller." *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 135 (3d Cir. 2014) (quoting *Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super. 267, 278 (App. Div. 2007). Here, the parties do not dispute that the first three elements of a TCCWNA claim are

satisfied, and therefore, the Court need only examine whether the Lease violated any legal right of Plaintiff or did not satisfy a legal responsibility of Defendant.

First, Defendant argues that because Plaintiff's TCCWNA claims are entirely derivative of and dependent upon her CLA claim, if the Court dismisses Plaintiff's CLA claims, it must also dismiss Plaintiff's TCCWNA claims. While the Court agrees with Defendant's logic, however, as discussed above, the Court has denied Defendant's motion for summary judgment on Plaintiff's CLA claims. Thus, this argument is unavailing. Along these same lines, Defendant also argues that the Court should decline to exercise supplemental jurisdiction over that state law claim after dismissing the CLA claim. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (citation and internal quotations omitted)). However, because the Court is not dismissing Plaintiff's federal claims, this argument is also unavailing.

Finally, Defendant argues that because its alleged violations of the CLA are omissions rather than the inclusion of any illegal provisions, the TCCWNA does not apply to the instant case. In support of this argument, Defendant cites to *Watkins v. DineEquity, Inc.*, which found that a restaurant menu which failed to include drink prices did not violate the TCCWNA. *Watkins*, 591 F. App'x at 136. The *Watkins* court reasoned that because the TCCWNA was enacted "to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts," the TCCWNA should only apply to contracts which *include* any provision that violates clearly established rights, not contracts that *omit* provisions in violation of clearly established rights. *Id.* at 134 (quoting *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 207 N.J.

31

428, 457 (2011)). In that regard, Defendant argues that any failure to disclose required information under the CLA in the Lease is an omission, comparable to the failure to include drink prices on a menu, and therefore, does not fall under the purview of the TCCWNA. However, whether such a failure to disclose constitutes an omission within the meaning of *Watkins* is inapposite. Here, Defendant did not merely omit required disclosures, it also disclosed this information in an inappropriate manner. Because the Court concluded above that the Lease disclosed the payment schedule, the liquidated damages calculation, and the purchase option price in a manner that was not clear and conspicuous, the *Watkins* decision is not applicable, here. Thus, the court will not dismiss Plaintiff's claims under the TCCWNA on this motion for summary judgment.

**IV.    CONCLUSION**

Regarding Count 1, the Lease clearly and conspicuously discloses the number of lease payments, the payment amounts, and the total number of payments, but not the due date or schedule of payments. Similarly, while the Lease does clearly and conspicuously disclose the conditions under which the lessee or lessor may terminate the lease, prior to the end of the lease term, it does not adequately disclose the method by which any liquidated damages upon early termination would be calculated. Additionally, although the Lease clearly and conspicuously discloses the existence of a purchase option, and the time at which such purchase option may be executed, it does not provide an option price that conforms to the requirements of Regulation M. Therefore, the Court denies Defendant's Motion for Summary Judgement as to Count 1.

Regarding Count 2, because the Court does not dismiss Plaintiff's CLA claims, Plaintiff's TCCWNA claims should not automatically be dismissed as moot or lacking jurisdiction. Moreover, because the Court has found that Defendant affirmatively included clauses violating the CLA in the Lease, such inclusions were not "omissions" within the meaning of the *Watkins*

decision and the TCCWNA may still apply. Therefore, the Court denies Defendant's Motion for Summary Judgement as to Count 2.

In Addition, Plaintiff's Motion for Leave to File an Amended Complaint consistent with this Opinion is granted.


Date: October 29, 2015


<u>  /s/ Freda L. Wolfson  </u>
Freda L. Wolfson
U.S. District Judge